UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CHARLES B. GILL, SR.,

                Plaintiff,

v.                                                  Case No. 23-cv-423-pp

JORDAN WOELFEL, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE (DKT. NO. 2), SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND STAYING THE CASE BY ADMINISTRATIVE CLOSURE**

      Charles B. Gill, Sr., who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 alleging that the defendants violated his civil rights. On May 23, 2023, before the court had screened his complaint, the court received from the plaintiff an amended complaint. Dkt. No. 13. This decision resolves the plaintiff's motion for leave to proceed without prepaying the filing fee, dkt. no. 2, screens that amended complaint, dkt. no. 13 and stays the case for administrative purposes because the plaintiff's criminal case has not yet been resolved.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

      The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without

prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On May 25, 2023, the court ordered the plaintiff to pay an initial partial filing fee of $20.42. Dkt. No. 14. The court received that fee on June 6, 2023. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Amended Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended

2

Case 2:23-cv-00423-PP    Filed 07/12/23    Page 2 of 11    Document 15

complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

The amended complaint names eleven defendants: Appleton Police Officers Jordan Woelfel, P. Christensen, T. Warmbier, S. Callaway, R. McCord, D. Anderson and A. Sincere; Grand Chute Police Sergeant S. Enneper; Outagamie County Assistant District Attorney Alex Johnson; and the cities of

Appleton and Grand Chute. Dkt. No. 13 at ¶¶4–14. The plaintiff sues each defendant in his or her individual and official capacities. Id. at ¶15.

The plaintiff alleges that at about 1:15 p.m. on September 16, 2022, he was driving his friend Mercedes Schultz to an ATM to withdraw money to pay her babysitter. Id. at ¶16. He said that as he drove the two back from the ATM, his brakes failed to engage because, although he had just replaced his brake lines, he failed to refill his brake fluid. Id. The plaintiff "did do at least 2 rolling stops through 2 stop signs" before using his emergency brake to come to a stop in front of Schultz's house. Id. Schultz got out to pay the babysitter, while the plaintiff "t[ook] care of his brake fluid situation." Id. However, a police cruiser appeared behind the car with its lights activated. Id. The plaintiff says he and Schultz returned to the car, and the plaintiff retrieved his driver's license and insurance from his visor to tell the officer about his brakes. Id. The plaintiff says the officer (Woelfel) told the plaintiff he had stopped him for running the stop signs and refused to accept the plaintiff's explanation about his brakes. Id. The plaintiff says that once Woelfel took his and Schultz's information, "this traffic stop became a drug investigation." Id.

The plaintiff says the other Appleton Police officer defendants arrived at the scene; Sergeant Enneper arrived later with a K9 unit. Id. at ¶17. The plaintiff alleges that at some point, Enneper used the K9 unit to detect drugs in the plaintiff's car, but the K9 unit "did not hit [the plaintiff's] car." Id. at ¶18. He asserts that his "car did not smell of drug use" and had no drug paraphernalia in sight. Id. at ¶17. He says he cooperated with the officers. Id.

4
Case 2:23-cv-00423-PP    Filed 07/12/23    Page 4 of 11    Document 15

He alleges that Woelfel and Enneper "did exceed the scope of the traffic stop, which now became unreasonable and a violation" of his rights when they "illegally searched [his] car under ACT 79." Id. He also claims that the officers discriminated against him based on his race because they searched him (a Black man) but not Schultz (who is White). Id. at ¶¶17, 28. He says the other officers "all stood there and watched Woelfel and Enneper search [his] car illegally and did nothing." Id. at ¶17.

The plaintiff alleges that Woelfel created a report about the search, in which he lied about knowing the plaintiff to be a drug user. Id. at ¶18. He claims that "[t]his action alone is slander and defamation to [the plaintiff's] name and character" because Woelfel has never ticketed the plaintiff or arrested him on drug charges. Id. He claims Woelfel does not know him and had no reasonable suspicion to search his car. Id. The plaintiff says that at the time, he was on extended supervision for a conviction of robbery with use of force but not drug charges, and he had no open drug cases. Id. He claims Woelfel violated his right to due process by creating a false written police report. Id. He says that Assistant District Attorney Johnson also violated his rights by using the false police report "to deprive [the plaintiff] of his liberty in more ways than one." Id.

The plaintiff alleges that Enneper stated in his report of the stop that Woelfel advised Enneper "that they would be searching [the plaintiff's] car regardless of a canine indication." Id. at ¶19. He reiterates that the officers searched his car even after the K9 unit did not alert on his car. Id. The plaintiff

says no officer ever asked him to pop the hood of his car so they could confirm his story about his brakes. Id. He says that Officer Warmbier detained him, and the plaintiff "became agitated" because he felt that the police were harassing him. Id. He says that Officer McCord also had stopped and searched him one day earlier. Id. The plaintiff says the officers "finally arrested [him] and charged [him] with possession of Methamphetamine, possession of drug paraphernalia, and a probation hold was placed on him as well." Id. He says that there was no supervisor from the Appleton or Grand Chute Police Department present. Id. at ¶20. He alleges that because of "the lack of 'adequate training' Officers of Appleton and Grand Chute commonly prolong traffic stops to investigate the driver for things other than 'The Traffic Stop.'" Id.

On October 10, 2022, the plaintiff appeared in court via video for his preliminary hearing. Id. at ¶21. He says that Woelfel appeared and gave false testimony about the traffic stop, falsely stating under oath that he knew the plaintiff "from past dealings." Id. The plaintiff says he loudly told both Johnson and his own attorney that Woelfel had lied under oath, but that Johnson nonetheless "proceeded to prosecute this case against [the plaintiff] armed with lies, and false testimony." Id. He claims that Johnson "used Woelfel's false police report and false testimony from [his] Preliminary Hearing as evidence to deprive [the plaintiff] of his liberty in some way." Id. at ¶30.

On November 11, 2022, an investigator for the Wisconsin State Public Defender requested a copy of all police records from the Appleton Police Department relating to the plaintiff. Id. at ¶22. He says that these records

6

revealed numerous interactions between him and police between September 2017 and November 2022, including charges for possession of a controlled substance on July 4, 2022, and referral to the district attorney of charges of possession of drug paraphernalia on July 5, 2022. Id. The plaintiff says that the July 4 charges "amounted to nothing," and that he has yet to be charged with any crime from July 5. Id. He says other drug charges from July 14, 2022, also were dismissed. Id. He says he never has "been convicted of a drug charge in Wisconsin" or "served county time, state time, or Federal time for selling drugs." Id. He reiterates that Woelfel had no knowledge about him selling drugs and had no probable cause to search his car. Id.

The plaintiff attached several exhibits to his amended complaint, including Woelfel and Enneper's narrative reports of the incident. Dkt. No. 13-1 at 1–3. Woelfel's report notes that when he stopped the plaintiff's car, he ran an information check on both the plaintiff and Schultz. Id. at 1. He learned that neither person had "extraditable warrants but [he] found [the plaintiff] was on felony parole and was Act 79 eligible." Id. He also learned that Schultz had an open criminal case for possession of narcotics and paraphernalia. Id. Based on that information, Woelfel "determined reasonable suspicion to do an Act 79 search was present." Id. The search of the plaintiff's car revealed "a dime-sized bag with a crystal rock like substance inside of it" in a wallet that also contained the plaintiff's "identifying information." Id. Woelfel tested this substance, which was positive for methamphetamine. Id. After the officers arrested and detained the plaintiff, they took him to the Outagamie County Jail

for booking. Id. While a jailer was searching the plaintiff, the plaintiff allegedly attempted to hide an item behind his back. Id. This item was a glass pipe with burnt residue on it and "chore boy" stuffed inside. Id. Woelfel issued the plaintiff a citation for failing to stop at a stop sign. Id. Enneper's report confirms the plaintiff's statement that Woelfel told Enneper "that they would be searching the vehicle, regardless of a canine indication under Act 79." Id. at 3. Woelfel told Enneper that "the male driver of the vehicle [the plaintiff] was Act 79 eligible." Id. After the K9 unit did not alert to the car, Woelfel asked Enneper to assist in searching the plaintiff's car. Id.

The plaintiff claims that the defendants' actions violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and the Wisconsin Constitution. Dkt. No. 13 at ¶¶23–30. He claims that the cities of Appleton and Grand Chute failed to adequately train, supervise and discipline their "law enforcement personnel" and "failed to follow their own rules, regulations, or policies or lack a policy addressing the problems concerning the protection of their citizens." Id. at ¶31. The plaintiff seeks a declaratory judgment that the defendants violated his rights, an "order to open and examine every report and case Woelfel has ever written and/or testified in" and compensatory and punitive damages each of $37.5 million against each defendant. Id. at ¶¶32–35.

On September 19, 2022—three days after the search he describes in the amended complaint—the plaintiff was charged in State v. Gill, Case No. 2022CF000825 (Outagamie County Circuit Court) (available at

wcca.wicourts.gov) with one count of felony possession of methamphetamine with intent to deliver and one misdemeanor count of possession of drug paraphernalia. As of March 30, 2023—the day the plaintiff filed this federal §1983 case—that case remained pending. Id. As of the date of this order, the plaintiff has a motion hearing scheduled for August 8, 2023 and a jury trial scheduled for August 15 and 16, 2023. Id.

C. Analysis

Under Younger v. Harris, 401 U.S. 37 (1971), "federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings." Gakuba v. O'Brien, 711 F.3d 751, 753 (7th Cir. 2013). "[C]laims of damages resulting from illegal searches, seizures, and detentions meet that description; they involve constitutional issues that may be litigated during the course of his criminal case." Id. (citations omitted). "Deciding those issues in federal court could undermine the state court proceeding." Id. "Resolving the constitutionality of law enforcement's conduct throughout [the plaintiff's] case[] would inject this court into Wisconsin's criminal proceedings, offending the principles of equity, comity, and federalism that counsel toward abstention." Shaw v. Cty. of Milwaukee, No. 21-1410, 2022 WL 1001434, at *2 (7th Cir. April 4, 2022) (citing J.B. v. Woodard, 997 F.3d 714, 722 (7th Cir. 2021) and SKS & Assoc. v. Dart, 619 F.3d 674, 677-79 (7th Cir. 2010)).

The amended complaint does, however, seek monetary damages—compensatory, nominal and punitive. Dkt. No. 13 at 6. Monetary relief is not

available to the plaintiff in his state criminal case, and it is possible that his claims may become time-barred by the time the state prosecution has ended. That means that, rather than dismissing the damages claims, the court must stay them. Id. (citing Gakuba, 711 F.3d at 753). The court will administratively close this case; when the plaintiff's criminal case has concluded, he may file a motion to reopen this case. The original, March 30, 2023 filing date will be preserved.

If the plaintiff decides to reopen this federal case after his state criminal case has concluded and pursue his constitutional claims in federal court, he may wish to be aware that prosecutors, including assistant district attorneys like Johnson, are immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998). Charging decisions are protected by that prosecutorial immunity, Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993), so a plaintiff cannot proceed against a prosecutor for prosecuting the plaintiff's criminal case. See Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018) (collecting cases).

### III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **ORDERS** that this case is **STAYED** pending the conclusion of the state criminal proceedings.

The court **ORDERS** that the Clerk of Court must **ADMINISTRATIVELY CLOSE** this case until the plaintiff files a motion to reopen, notifying the court that his state criminal proceedings are concluded.

The court **ORDERS** that the March 30, 2023 filing date is **PRESERVED** for statute-of-limitations purposes.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$329.58** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution and to DLSFedOrdersEastCL@doj.state.wi.us.gov.

Dated in Milwaukee, Wisconsin this 12th day of July, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**