UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

CHARLES B. GILL, SR.,

          Plaintiff,

v.                                        Case No. 23-cv-423-pp

JORDAN WOELFEL, *et al.*,

          Defendants.

---

**ORDER GRANTING PLAINTIFF'S MOTION TO REOPEN CASE (DKT. NO. 16), SCREENING AMENDED COMPLAINT UNDER 28 U.S.C. §1915A AND DISMISSING CASE FOR FAILURE TO STATE CLAIM**

---

On July 12, 2023, the court screened the plaintiff's amended complaint under 42 U.S.C. §1983 and stayed the case pending the outcome of the plaintiff's concurrent state court matter. Dkt. No. 15 (citing State v. Gill, Case No. 2022CF000825 (Outagamie County Circuit Court)). In that order, the court observed that the plaintiff had a motion hearing scheduled for August 8, 2023, and a jury trial scheduled for August 15 and 16, 2023. Id. at 9. The court advised the plaintiff that "when the plaintiff's criminal case has concluded, he may file a motion to reopen this case." Id. at 10. The court administratively closed the case pending notice from the plaintiff that his state court case had concluded and that he wished to proceed in this federal case. Id. at 10–11.

On August 18, 2023, the court received from the plaintiff a letter explaining that his state court case is closed. Dkt. No. 16. The plaintiff asks the court "to please reopen" this federal case. Id. at 1. The public docket for the plaintiff's state court case confirms that it is closed, as the court discusses

1

more below. The court will grant the plaintiff's motion to reopen. This order screens the amended complaint. Dkt. No. 13.

## I.   Screening the Amended Complaint

### A.   Federal Screening Standard

As the court explained in the previous order, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the amended complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, the amended complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The amended complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw

the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cnty. of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.   The Plaintiff's Allegations

In the July 12 order, the court detailed the facts alleged in the amended complaint. Dkt. No. 15 at 3–9. The plaintiff does not include any new facts in his letter, and the court will not recount all facts detailed in the previous order.

As the court explained in the July 12 order, the amended complaint names as defendants Appleton Police Officers Jordan Woelfel, P. Christensen, T. Warmbier, S. Callaway, R. McCord, D. Anderson and A. Sincere; Grand Chute Police Sergeant S. Enneper; Outagamie County Assistant District Attorney Alex Johnson; and the cities of Appleton and Grand Chute. Id. at 3–4 (citing Dkt. No. 13 at ¶¶4–14). The plaintiff sued each defendant in his or her individual and official capacities. Id. (citing Dkt. No. 13 at ¶15.)

The amended complaint concerns the plaintiff's September 16, 2022 arrest and interaction with the arresting officers. In sum, the plaintiff alleges that the officers unreasonably searched his car, discriminated against him, lied about the arrest in a conduct report and harassed him. Id. at 4–5. He alleges that the district attorney used the false police report to bring and pursue charges against him. Id. at 5–6.

The plaintiff claims that the defendants' actions violated his rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the U.S. Constitution and the Wisconsin Constitution. Id. at 8 (citing Dkt. No. 13 at ¶¶23–30). He claims that the Cities of Appleton and Grand Chute failed to adequately train, supervise and discipline their officers to follow city rules and regulations or adopt a policy to address the officers' actions. Id. The plaintiff seeks declaratory judgment that the defendants violated his rights, an order "'to examine every report and case Woelfel has ever written and/or testified in'" and compensatory and punitive damages of $37.5 million against each defendant. Id. (quoting Dkt. No. 13 at ¶¶32–35).

On August 15, 2023, the plaintiff entered a plea of no contest to a charge of possession of methamphetamine. State v. Gill, Case No. 2022CF000825 (Outagamie County Circuit Court), available at https://wcca.wicourts.gov. He was sentenced to three years' probation to run consecutive to his existing sentence and concurrent with a one-year sentence of imprisonment imposed for his no contest plea to a charge of burglary in another Outagamie County

4

Case. See State v. Gill, Case No. 2022CF001179 (Outagamie County Circuit Court), available at https://wcca.wicourts.gov.

   C.   Analysis

      1.   *Individual Capacity*

The amended complaint alleges that Officer Woelfel falsely wrote that he knew the plaintiff and knew he was a drug user. The plaintiff says that Woelfel used that false information as a pretext to search the plaintiff's car despite not having reasonable suspicion that the plaintiff was engaging in illegal activity. That search uncovered a substance that tested positive for methamphetamine, which led to Woelfel's arrest of the plaintiff and the plaintiff's detention. The plaintiff claims that the arrest was invalid because the search was unlawful, and he says the search was unlawful because it was based on Woelfel's false information about the plaintiff being a known drug user. He says his subsequent criminal charges and prosecution were malicious because they were based on Woelfel's false information.

The court first addresses the plaintiff's claim that Woelfel and Sergeant Enneper unlawfully searched his car based on Woelfel's false information that he knew the plaintiff and knew he was a drug user. An officer's use of knowingly false information to conduct a search can be the basis for a Fourth Amendment claim of an unlawful search. See Knox v. Smith, 342 F.3d 651, 658 (7th Cir. 2003). But it was not Woelfel's statement that he knew the plaintiff (true or not) that led to the search. As both the amended complaint and the attached police reports recount, the plaintiff was on felony parole at

5

the time of the search. Woelfel learned that fact when he ran the plaintiff's information—*before* conducting the search. His report states that *that* information provided him "reasonable suspicion to do an Act 79 search" of the plaintiff's car. Dkt. No. 13-1 at 1.

An officer ordinarily needs probable cause to search a suspect or his property, such as his car. Griffin v. Wisconsin, 483 U.S. 868, 873 (1987). But Wisconsin Statute §302.113, colloquially known as "Act 79," "authorizes law-enforcement officers to search the person, home, or property of an offender released to extended supervision following a term of imprisonment if the officer has reasonable suspicion that the offender is involved in criminal activity or is violating a condition of his supervision." United States v. Caya, 956 F.3d 498, 500 (7th Cir. 2020); see also United States v. Slater, Case No. 21-CR-106-PP, 2022 WL 558097, at *13 (E.D. Wis. Feb. 24, 2022) (noting "that it has long been the case that [persons] on supervision have diminished expectations of privacy under the Fourth Amendment").

Even if Woelfel falsely claimed to know the plaintiff from past interactions, he had *correct* information about the plaintiff's parole status from running the plaintiff's information after the stop. The plaintiff does not contest the stop or the fact that he was on parole at the time. Nor does the plaintiff contest Act 79 generally, which the Seventh Circuit recently upheld as constitutional. See Caya, 956 F.3d at 503–04. Because Woelfel knew that the plaintiff was on felony parole at the time of the traffic stop, he needed only reasonable suspicion that the plaintiff was involved in criminal activity to

search him or his property under Act 79. Woelfel had just witnessed the plaintiff run two stop signs; the plaintiff was in a car with an individual who had an open drug case; and he was on parole from a felony conviction. That information may not have provided Woelfel probable cause to search the plaintiff's car, as the plaintiff asserts. But under Act 79, Woelfel did not *need* probable cause to conduct the search. The information that Woelfel had cleared "the lower standard of reasonable suspicion" that allowed him to perform the search under Act 79. United States v. Liphart, No. 21-2331, 2022 WL 1301944, at *3 (7th Cir. May 2, 2022). That means that neither Woelfel nor Enneper violated the plaintiff's rights by searching his car.

The court reviews the plaintiff's claim of unlawful arrest under the Fourth Amendment. See Alexander v. McKinney, 692 F.3d 553, 558 (7th Cir. 2012). An officer has an absolute defense to a claim of unlawful arrest or detention or unreasonable seizure if there existed probable cause for the arrest or detainment. See McWilliams v. City of Chicago, Case No. 20-1770, 2022 WL 135428, at *2 (7th Cir. Jan. 14, 2022) (citing Martin v. Marinez, 934 F.3d 594, 598 (7th Cir. 2019)); Abbott v. Sangamon County, 705 F.3d 706, 713–14 (7th Cir. 2013). But if "the finding of probable cause is based on the defendant's intentional misrepresentation or concealment of material facts, the plaintiff may be able to proceed on a Fourth Amendment claim challenging the reasonableness of an arrest." Schertz v. Waupaca County, 875 F.2d 578, 582 (7th Cir. 1989).

As the court has explained, the search of the plaintiff's car was lawful under Act 79. The discovery of methamphetamine in the plaintiff's wallet—which was in the plaintiff's car during the valid search of the car—provided probable cause for the plaintiff's arrest; it was not Woelfel's misrepresentations that led to the finding of probable cause for the plaintiff's arrest. Because the officers found methamphetamine in the plaintiff's car during a lawful search, they had probable cause for the plaintiff's arrest and detention after arrest. See United States v. Wilson, 2 F.3d 226, 232 (7th Cir. 1993). The plaintiff cannot proceed on a Fourth Amendment claim related to his arrest or imprisonment.

The plaintiff also cannot proceed on a claim related to Woelfel's allegedly false incident report. "A police officer who files a false report may be liable for false arrest if the filing of the report leads to a seizure in violation of the Fourth Amendment, even if he did not conduct the arrest himself." Acevedo v. Canterbury, 457 F.3d 721, 723 (7th Cir. 2006). But Woelfel's statement in his report about the plaintiff being a drug dealer did not lead to his arrest. It was the discovery of methamphetamine in the plaintiff's car (during a lawful search) that led to the plaintiff's arrest and detention. The plaintiff does not claim that other information in Woelfel's report was false or led to his arrest. Whether Woelfel's information about knowing the plaintiff was true was immaterial for purposes of the search and arrest and did not lead to either. The plaintiff has not stated a claim against Woelfel based on the allegedly false information in the police report.

The plaintiff also seeks to hold all other officers liable for standing by while Woelfel and Enneper allegedly violated his rights. He has not alleged that any of the other officers directly violated his rights or were involved in the search or arrest. A bystander officer may be constitutionally liable if "he had reason to know that a fellow officer was . . . committing a constitutional violation" and "had a realistic opportunity to intervene to prevent the act from occurring." Lewis v. Downey, 581 F.3d 467, 472 (7th Cir. 2009). But Woelfel did not violate the plaintiff's rights by stopping him, searching him or his car or arresting him. That means the bystander officers did not witness a constitutional violation and had no reason to intervene. The plaintiff has not stated a claim against officers Christensen, Warmbier, Callaway, McCord, Anderson and Sincere.

The plaintiff also claims that the officer–defendants discriminated against him because of his race. The Equal Protection Clause of the Fourteenth Amendment protects against arbitrary discrimination "unrelated to the character of the activity allegedly discriminated against." Reed v. Faulkner, 842 F.2d 960, 962 (7th Cir. 1988). To state a claim under the Equal Protection Clause, the plaintiff must show: 1) that similarly situated persons have been treated differently by the government; and 2) that there is no rational relation between the dissimilar treatment and any legitimate penal interest. See May v. Sheahan, 226 F.3d 876, 882 (7th Cir. 2000) (citing Hudson v. Palmer, 468 U.S. 517, 523 (1984), and Williams v. Lane, 851 F.2d 867, 881–82 (7th Cir. 1988)). The plaintiff's allegations do not satisfy these criteria. He alleges only that the

officers searched him, and that he is Black, but that they did not search Schultz, who is White. He alleges no facts to suggest that that decision was based on race. The officers may have searched the plaintiff because he was the driver of the car or because he was on felony parole. His speculation that the officers discriminated against him, without any factual support, is not sufficient to state a claim. The court will not allow the plaintiff to proceed under the Equal Protection Clause.

The plaintiff alleges that ADA Johnson filed a false criminal complaint against him and maliciously prosecuted him on the false charges. A claim of malicious prosecution arises under the Fourth Amendment but is "entirely distinct" from a claim of false arrest; a claim of malicious prosecution seeks to remedy "detention accompanied not by absence of legal process, but by *wrongful institution* of legal process." Wallace v. Kato, 549 U.S. 384, 390 (2007) (emphasis in original). A claim of malicious prosecution is cognizable under §1983 only if there no adequate tort remedy under state law. Cannon v. Newport, 850 F.3d 303, 306 (7th Cir. 2017). But the State of Wisconsin provides a tort remedy for the plaintiff's claim. Id. (citing Strid v. Converse, 331 N.W.2d 350, 353–54 (Wis. 1983), and Julian v. Hanna, 732 F.3d 842, 845 (7th Cir. 2013)). That means the plaintiff must pursue his claim of malicious prosecution in state court and cannot proceed on that claim in this lawsuit.

Even if the plaintiff could pursue this claim in federal court, probable cause to prosecute is a complete defense to malicious prosecution. McWilliams v. City of Chicago, Case No. 20-1770, 2022 WL 135428, at *3 (7th Cir. Jan. 14,

10

Case 2:23-cv-00423-PP   Filed 11/13/23   Page 10 of 17   Document 18

2022) (citing Johnson v. Saville, 575 F.3d 656, 659 (7th Cir. 2009)). The methamphetamine found in the plaintiff's car provided probable cause for his arrest. It also provided probable cause for a prosecution of possession of methamphetamine, possession of drug paraphernalia and a probation hold.

The court also noted in the July 12 order that prosecutors, including assistant district attorneys like Johnson, are absolutely immune from suit for actions taken in initiating and pursuing criminal prosecutions because that conduct is "'intimately associated with the judicial phase of the criminal process.'" Dkt. No. 15 at 10 (quoting Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976); and citing Davis v. Zirkelbach, 149 F.3d 614, 617 (7th Cir. 1998)). Charging decisions are protected under total prosecutorial immunity. Buckley v. Fitzsimmons, 509 U.S. 259, 269 (1993). That means the plaintiff cannot proceed against Johnson in this case or any civil action for Johnson doing his job by prosecuting the plaintiff's criminal case. See Tobey v. Chibucos, 890 F.3d 634, 650 (7th Cir. 2018) (collecting cases).

Finally, the plaintiff alleges that Woelfel defamed him by making false statements about the plaintiff being a drug user in his written report. Defamation occurs when a person lies about someone and causes them harm as a result. Lynch v. Holder, Case No. 19-CV-1601-PP, 2020 WL 998542, at *3 (E.D. Wis. Feb. 28, 2020). Claims of defamation "are *state-law* claims." Id. (emphasis in original). The Constitution does not forbid defamation, and it does not deprive a person of his liberty protected under the Due Process Clause. Edwards v. Strahota, Case No. 15-CV-845-PP, 2016 WL 614697, at *6 (E.D.

Wis. Feb. 16, 2016) (quoting Smith v. City of Chicago, 992 F. Supp. 1027, 1030 (N.D. Ill. 1998), and citing Davis v. City of Chicago, 53 F.3d 801, 804 (7th Cir. 1995)). That means a Wisconsin resident (like the plaintiff) who wants to sue another Wisconsin resident (like Woelfel) for lying about him "may do so in *state* court, but not in *federal* court." Lynch, 2020 WL 998542, at *3 (emphasis in original). The court will not allow the plaintiff to proceed on a state-law claim of defamation.

### 2. *Official Capacity*

The plaintiff also sues the defendants in their official capacities. Claims against a state actor in his official capacity represent another way to plead a claim against the entity that he represents or for which the official works. Kentucky v. Graham, 473 U.S. 159, 165 (1985) (citing Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690, n.55 (1978)). That means that court construes the claims against the Appleton Police Officers as if the plaintiff had brought them against the City of Appleton, construes the claim against Sergeant Enneper as if the plaintiff had brought it against the City of Grand Chute and construes the claim against Johnson as if the plaintiff had brought it against Outagamie County. Id. at 165–66. The plaintiff's claims against the officers in their official capacities are duplicative of his claims against the Cities of Appleton and Grand Chute because the cities are the true defendants for the official-capacity claims. See Hamilton v. Gavin, Case No. 22 C 02285, 2023 WL 2161663, at *3 (N.D. Ill. Feb. 22, 2023) (quoting Sanders v. Sheahan, 198 F.3d 626, 629 (7th Cir. 1999) ("A claim against a government employee acting in his

official capacity is the same as a suit directed against the entity the official represents.")).

A local government such as a municipality or county "cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Monell, 436 U.S. at 691 (emphasis in original). A municipality may "be held liable under § 1983 only for its own violations of federal law." Los Angeles County v. Humphries, 562 U.S. 29, 36 (2010) (citing Monell, 436 U.S. at 694). To demonstrate municipal liability, a plaintiff "must demonstrate that there was an 'official policy, widespread custom, or action by an official with policy-making authority [that] was the "moving force" behind his constitutional injury.'" Estate of Perry v. Wenzel, 872 F.3d 439, 461 (7th Cir. 2017) (quoting Daniel v. Cook County, 833 F.3d 728, 734 (7th Cir. 2016)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" City of St. Louis v. Praprotnik, 485 U.S. 112, 138 (1988) (quoting Pembaur v. Cincinnati, 475 U.S. 469, 479–80 (1986) (emphasis in original)).

The plaintiff has not alleged that the officers violated his rights as a result of an unconstitutional policy of the Cities of Appleton and Grand Chute. He says the cities *failed* to follow their rules, regulations or policies or failed to have a proper policy in place to protect their citizens. He alleges that because the cities failed to properly train, supervise and discipline their police officers, they

13

Case 2:23-cv-00423-PP   Filed 11/13/23   Page 13 of 17   Document 18

violated the plaintiff's rights during the September 16, 2022 traffic stop. But the court has found that no officer violated the plaintiff's rights during the traffic stop. The plaintiff states no basis to conclude that either city failed to train, supervise or discipline their officers, who committed no constitutional violations. The plaintiff has not alleged that Johnson followed any Outagamie County policy or practice when bringing charges or prosecuting him. He has not stated a claim against any defendant in his or her official capacity and has not stated a claim against the Cities of Appleton or Grand Chute.

The amended complaint fails to state a claim under federal law. Even if the amended complaint stated a federal claim, the plaintiff would not be entitled to much of the relief he seeks. In addition to damages, the plaintiff seeks an order to open and examine all cases in which Woelfel has written a report or testified. That request is well beyond the remedial powers of this court in a lawsuit under §1983. Under the PLRA, the plaintiff may seek *limited* injunctive relief, see 18 U.S.C. §3626(a), or monetary damages. The plaintiff also seeks declaratory relief, which relates solely to the defendants' alleged violations of his rights in the past. See Green v. Mansour, 474 U.S. 64, 68–73 (1985). The plaintiff may sue the defendants under §1983 in their official capacities for declaratory or injunctive relief, see Will, 491 U.S. at 71 n.10 (citing Graham, 473 U.S. at 167 n.14 (1985), and Ex Parte Young, 209 U.S. 123, 159–60 (1908)), but only if the relief he seeks is *prospective*—that is, if he seeks relief from future harm, Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993). Because there is no ongoing violation

of the plaintiff's rights, he may not use §1983 to obtain a judgment against the defendants "declaring that they violated federal law in the past." Id.

The court will dismiss the amended complaint. District courts generally permit civil plaintiffs at least one opportunity to amend their pleadings, but the court need not do so "when 'it is *certain*' that amendment would be futile." See Fields v. Miller, Case No. 21-1419, 2022 WL 1011666, at *3 (7th Cir. Apr. 5, 2022) (citing Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind., 786 F.3d 510, 519–20 (7th Cir. 2015)). The plaintiff's amended complaint is thorough in its allegations of the facts surrounding his claims, and the attached exhibits provide additional information. Based on that detailed information, the court concludes that further amendment would not provide a basis for a federal claim against any defendant and would be futile. The court will not allow the plaintiff to amend his complaint a second time.

Because the amended complaint does not state a federal claim, the court will not exercise supplemental jurisdiction over any other putative claims arising under state law. The court will dismiss any state law claims without prejudice pursuant to 28 U.S.C. §1367(c)(3).

## II. Conclusion

The court **GRANTS** the plaintiff's motion to reopen this case. Dkt. No. 16.

The court **ORDERS** that the clerk's office must **REOPEN** the case.

The court **ORDERS** that the case is **DISMISSED** under 28 U.S.C. §§1915(e)(2)(B) and 1915A(b)(1) because the amended complaint fails to state a claim.

The court will document that the plaintiff has incurred a "strike" under 28 U.S.C. §1915(g).

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$280.11** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the clerk of court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Stanley Correctional Institution, where the plaintiff is housed, and will email a copy to DLSFedOrdersEastCL@doj.state.wi.us.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. R. App. P. 4(a)(5)(A). If the plaintiff appeals, he will be liable for the $505 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to

16
Case 2:23-cv-00423-PP   Filed 11/13/23   Page 16 of 17   Document 18

proceed on appeal without prepaying the appellate filing fee, he must file a motion in *this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed another "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year after the entry of the judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine, what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 13th day of November, 2023.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**